## SCHOOL DISTRICT v. BENNETT.

1. SCHOOL DIRECTORS: *Election of: Notice.*
   The act of April 4, 1887, amending sec. 6206 Mansf. Dig., and providing that any person chosen to the office of school director, and accepting that position, shall, within ten days after having been notified of his election, take the oath prescribed by the Constitution and file the same in the office of the Clerk of the County Court, does not make it the duty of that court to canvass the vote for directors and certify the result to those elected.

2. SAME: *Same.*
   It is the duty of the officers holding an election for school directors to give notice of their election to the persons who are chosen. But where a person elected is present and having learned the result, announces that he accepts the office, no further notice to him is necessary.

3. SAME: *Oath of office.*
   Under the act of 1887, a school director must qualify by taking and subscribing the official oath and filing it with the County Clerk within ten days after he is notified of his election.

4. SAME: *Same.*
   It is not sufficient to take such oath orally; and where the new director fails to qualify within the time and in the manner directed by the statute, the term of his predecessor will continue, as provided in Mansf. Dig., sec. 6205.

3. SAME: *When contracts of, binding.*
   Two of the three directors of a school district may bind it by a contract made at a meeting of the directors, attended by the third director, or of which he has had notice. But no contract can be made except at a meeting, and no meeting can be held unless all the directors are present or the absent member has been notified. Notice of a regular meeting is, however, unnecessary where such meetings are held at stated times fixed by the board.

APPEAL from *Clay* Circuit Court, Eastern District.

J. E. RIDDICK, Judge.

*E. F. Brown,* for appellant.

School District v. Bennett.

1. Sec. 6206 Mansf. Dig. was amended by Acts 1887, p. 231, by changing the time from ten days from October 15th to ten days from the May meeting. Rodery having been notified of his election, and having accepted the office, was sworn in to succeed Baker. This May meeting is clothed with authority to count the ballots and notify any elector of his election as director. *43 Ark., 415 ; Mansf. Dig., secs. 6224–6.*

Rodney was at least director *de facto.* *9 Am. Dec., 50.*

2. Acts of officers of quasi municipal corporations are of two kinds, judicial and ministerial, and the meeting of a school board for the employment of a teacher is a judicial act, and all the members of the board must be present. *1 Bos. and Pul., 229; 31 Miss., 533; Dill. Mun. Corp., sec. 283, note 1; ib secs. 289, 262–3–4–5.* While two directors may perform a ministerial act (*36 Ark., 446*), yet before a majority can act to bind the district there must be a quorum to transact business, and a majority is not a quorum where the absentee has no notice, except at a regular meeting. *13 Pa., 144; 22 Ohio, 144; 27 Kans., 129; 87 Penn., 395; 47 Mich., 629; 41 N. Y., 312; 11 Ver., 39.*

The employment of a teacher is a judicial act, and a meeting of two without notice to the third is not a quorum. There was no lawful meeting of the board and the contract is void.

*J. C. Hawthorne,* for appellee.

1. Did Baker's term of office expire immediately on the election of Rodery as his successor? Cites *Acts Adj. Sess. 1875, p. 73; secs. 57, 56, 58; Acts 1887, p. 231; Acts 1883.*

But Rodery never qualified until the 26th of September, 1887. He must take and subscribe the oath of office and file it with the Clerk.

2. A majority of the school directors, without calling a meeting of the three, can enter into a valid contract. *Sec. 6366 Mansf. Dig.; 36 Ark., 446.*

HEMINGWAY, J. Baker, Pollard and McCleskey were directors of the appellant school district, when the annual district meeting convened in May, 1887. Baker was the senior member of the board, and Rodery was elected by the meeting to succeed him. The vote was canvassed and the result declared, when Rodery announced that he would accept the office. At some subsequent time, Rodery took some kind of oral affidavit before a justice of the peace ; but he did not " subscribe to the oath prescribed for officers by the Constitution of this State," " and file it in the office of the Clerk of the County Court " until the latter part of the following September. During the interval Baker continued to act as a director. On the day that Rodery's oath was filed with the County Clerk, the appellee made a contract with Baker and Pollard as directors of the district, to teach a school in the district for three months at $40 per month.

The appellee taught the school, the directors refused to pay him, he brought this suit, recovered a judgment and they have appealed. He was notified by Rodery and McCleskey, before he began to teach, that they disputed the validity of his contract and would not pay him if he taught. It does not appear whether the contract was made at a meeting of the board or by the two directors acting separately; but it was not made at a meeting held at the stated time for meetings in that district, and McCleskey had no notice of the meeting, if one was held. The court, in its instructions, charged that notice to him was not necessary.

Two directors can act for the board, if they proceed in conformity to law. *Mans. Dig., sec. 6366.*

This settled, the appeal tenders two questions for our consideration : Was Baker a director when he signed the contract ? If so, was it the contract of the board unless made by a majority of the directors, at a meeting of the board, of which the director absent had notice ?

LII.—33.

Baker's term continued until his successor was elected and qualified. *Mans. Dig., sec. 6205.*

The statute provided that the term of office should begin on the 15th of October, after the election; *Mans. Dig., sec. 6205*; and that the party elected within ten days after the 15th of October, take and subscribe, before a justice of the peace, the oath prescribed for officers by the Constitution and file it with the County Clerk. This was amended by the act of April 4, 1887, which provides that any person elected and accepting the office, should, within ten days after having been notified of · his election, file his acceptance with his predecessor, subscribe the oath and file it with the Clerk, and enter at once upon the discharge of his duties. It is insisted that under the law as amended, the term of the member elected does not begin until October; that the officers holding the election are required to return the result to the County Clerk ten days before the court meets for levying taxes, and that it is thereby implied that this tribunal shall canvass the vote for directors and certify the result to those elected, and that as it convenes in October the term cannot begin sooner.

1. School Directors: Election of: Notice.

When the justices of the peace sit with the County Judge, the Constitution directs the scope of their work; which is to assist in levying taxes and making appropriations. *Con. 1874, art. 7, sec. 30.* There is nothing in the nature of this duty, akin to that of canvassing and certifying the vote for officers, and as the statute does not cast it upon them in express terms or by necessary implication we must assume that the return is made to the County Court at the time designated, to enable the court to levy the tax voted and that it has no further duty in the premises. True, the return shows the number of votes cast in favor of each person voted for for director, but this no doubt is intended to furnish the court and all other persons interested, a list of school directors.

2. Same: Same.

The law did not then prescribe how notice of his election should be given to the person chosen, but we think it was in-

School District v. Bennett.

tended that the officers who held the election should give it. In most cases, as in this, the pérson is present, learns the result and signifies his acquiesence; in such cases, no further notice was deemed necessary. Rodery was present when he was elected, and having announced that he accepted the office, it was unnecessary to give him any formal notice of his election.

The law required that he qualify within ten days after his election and enter at once upon the discharge of his duties. To qualify, the law required that he should subscribe the oath and file it with the Clerk. These provisions seem wise, and we think they are mandatory; if directors could neglect them and meet their requirements by going before an officer and orally taking some oath, the fiscal officers of the county could never know who composed the various boards of directors, and confusion and disorder would result. As Rodery did not qualify as the law directs, Baker's term continued. *State v. Johnson, 26 Ark., 281.* 3. SAME: Oath of office.

4. SAME: Same.

The new director should file his acceptance of the office with his predecessor, but we are not inclined to think that the statute in that regard is mandatory.

Is it necessary that a contract to be binding on the district, should be executed at a board meeting, at which all the directors are present, or of which the one absent had notice? 5. SAME: When contracts of, binding.

We appreciate the practical importance of this question, but entertain no doubt as to its proper solution either on reason or authority. The different members of a board, scattered in the pursuit of their several avocations are not the board. Duties are cast upon boards composed of a number of persons, in order that they may be discharged with the efficiency and wisdom, arising from a multitude of counsel. This purpose cannot be realized without conference between the members of the board with reference to the matters intrusted to them before they take action thereon. After conference, the board will often escape unwise measures, to which each of the members acting separately would have committed themselves

either from haste, immature consideration, the demands of private engagement, or an unwillingness to shorten the allotted span of life under the entreaties of an importunate agent or teacher.

The public select each member of the board of directors, and is entitled to his services ; this it cannot enjoy, if two members can bind it without receiving or even suffering the counsel of the other.   Two could, if they differed with the third, overrule his judgment and act without regarding it ; but he might by his knowledge and reason change the bent of their minds, and the opportunity must be given him.

We conclude that two directors may bind the district by a contract made at a meeting at which the third was present, or of which he had notice ; but no contract can be made except at a meeting, and no meeting can be held unless all are present, or unless the absent member had notice.

No notice of a regular meeting is necessary where the board has fixed stated times for them.   Our views find support in many adjudged cases.   *Aikman v. School Dist., 27 Kan., 129; Hazen v. Lerche, 47 Mich., 626; Schl. Dist. v. Jennings, 10 Ill., Ap., 643; Ballard v. Davis, 31 Miss., 533; Downing v. Rugor, 21 Wend., 178.*

We do not decide that the members of the board may not act separately and without meeting, in a matter which involves no exercise of discretion.

The instructions were erroneous, and the judgment will be reversed and the cause remanded.

COCKRILL, C. J., did not sit in this case.