DIERKS SPECIAL SCHOOL DISTRICT *v.* VAN DYKE.

Opinion delivered February 13, 1922.

1. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY TO CONTRACT.—No contract can be made by a school board except at a board meeting, and no meeting can be held unless all the directors are present, or the absent member or members have been duly notified; but notice of regular meetings at stated times fixed by the board is unnecessary.

2. SCHOOLS AND SCHOOL DISTRICTS—RATIFICATION OF CONTRACT—IN-
STRUCTION.—An instruction as to the ratification of an illegal
contract of a school district at a meeting at which all of its mem-
bers were present or of which they had notice was abstract and
prejudicial where there was no proof of such meeting.

3. EVIDENCE—VARYING OR CONTRADICTING A WRITTEN CONTRACT.—
While parties to a written contract may prove that after its
execution they substituted a new agreement for it, they can-
not prove that at the time the contract was entered into they
had an understanding not expressed in the written contract nor
reduced to writing.

4. SCHOOLS AND SCHOOL DISTRICTS—MODIFICATION OF INVALID CON-
TRACT.—If a contract between school directors and an architect
to prepare plans and superintend the erection of a school build-
ing never became binding because not executed under authority
given at a regular meeting or a called meeting at which all the
directors were either present or had due notice, testimony of an
oral understanding prior to the signing of the contract that, if
the architect's services proved unsatisfactory he would quit, was
properly excluded; such modification being invalid likewise.

Appeal for Howard Circuit Court; *James S. Steel,*
Judge; reversed.

STATEMENT OF FACTS.

V. B. Van Dyke sued the Dierks Special School Dis-
trict to recover $2,000 alleged to be due him for
services as architect in preparing the plans and superin-
tending the erection of a school building for said district.
The school district denied liability.

The facts, briefly stated, are that on the 4th day of
August, 1918, the president and secretary of Dierks
Special School District in Howard County, Arkansas,
and V. B. Van Dyke signed a written contract whereby
the former employed the latter in the capacity of archi-
tect to prepare and furnish drawings and specifications
for a schoolhouse and to have general superintendence
of the building operations for 5 per cent. of the cost of the
building. It does not appear that the execution of the
contract was authorized by the board of directors of said
special school district at a regular meeting of the board,
or at a call meeting after due notice to all the members.

The record merely shows that four of the directors passed a resolution to employ V. B. Van Dyke as architect in the erection of the new school building, and that the four directors who were named were present. Again the minutes of the school board show that there was another meeting of the board on the 4th day of September, 1918, at which the four members who were named were present. At that meeting the resolution shows that the board voted to receive the contract for the services of V. B. Van Dyke as architect in the construction of the new school building and instructed the president and secretary to sign the same. It is not shown that this was at a regular meeting of the board, or that all the members were given notice of the meeting. There are six directors of the special school district. Thus far there is no contradiction in the evidence.

V. B. Van Dyke was a witness for himself. According to his testimony, he prepared the plans and specifications for the erection of the new schoolhouse and superintended the building operations with the knowledge of each of the directors until he was discharged by the directors of the school district in August, 1919. Van Dyke denied that in November, 1918, he accepted $750 as payment in full for his services as architect for the preparation of plans and the superintendence of the erection of the new schoolhouse for the district. He admitted that the directors paid him that sum of money, but said that it was a payment on account, and that it was not agreed between them that this should be in full payment of his services, and that he should no longer act as architect in the erection of the new school building.

According to the testimony of several of the directors in November, 1918, they had an agreement with V. B. Van Dyke whereby he agreed to accept $750 as payment in full of his services as architect under a contract which he claimed to have with Dierks Special School District; and that he was to act no longer in the capacity of such architect. A warrant for $750 was delivered to

Van Dyke, and he received and collected the same. The directors did not recollect whether all the members of the school board were present when this was done, but state that no record of the proceedings was kept by the school board. Van Dyke was discharged by a written resolution at a meeting of the school board held on August 20, 1919, for the purpose of investigating the trouble between V. B. Van Dyke and J. W. Epperson, who was in charge of the construction of the school building for the school board. It was shown that Van Dyke had interfered with Epperson in the discharge of his duties, and had threatened to shoot Epperson if he did not leave the building. Van Dyke also failed to make certain changes in the plans of the schoolhouse which the board had directed him to make.

Van Dyke on his part denied that he had interfered with Epperson as superintendent of construction of the building, or that he had refused to make the changes in the plans of the building requested by the board. He said that he had merely delayed making the changes until it was necessary to work upon that part of the building where the changes were to be made. He further stated that he could make the changes within thirty minutes. Other facts will be stated or referred to in the opinion.

The jury returned a verdict in favor of the plaintiff, Van Dyke for $870, and from the judgment rendered the defendant school district has duly prosecuted an appeal to this court.

*Abe Collins,* for appellant.

1. The president and secretary of a school board can not execute a contract which would bind the district unless they are authorized so to do at a regular meeting of the school board, or at a special or called meeting at which all members were present and participating, or of which meeting they each had due notice of the time, place and purpose of the meeting. 52 Ark. 511; 54 *Id.* 58; 55 *Id.* 473; 64 *Id.* 489; 67 *Id.* 236; 73 *Id.* 194; 84 *Id.* 550; 90 *Id.* 335; 105 *Id.* 106; 109 *Id.* 125; 110 *Id.* 262; 58 L. R. A. (N. S.) 1047, case note.

The burden was on the appellee to show that the execution of the contract was properly authorized.   86 Ark. 687; 62 *Id*. 33; 21 Kan. 389; 94 Ark. 584-586.

2.   There was no issue of ratification raised by the complaint nor joined in the pleadings.    However, the burden of proof was on the appellee on that issue, if raised.   67 Ark. 236; 81 Ark. 843; 110 *Id*. 262; 82 *Id*. 533; 95 *Id*. 26.

3.   It was error to exclude evidence to prove either before the contract was signed or immediately thereafter, appellee agreed to step down and out in the event his services became unsatisfactory, etc.   This amounted to an additional agreement.   112 Ark. 223; 118 S. W. (Ark.) 409; 82 Ark. 547.

4.   The contract, if binding at all, was entire, calling for completion of the whole work, and providing for a fixed compensation for the completion of the whole.   The jury should have been instructed that, if the appellee gave reasonable grounds therefor, and was discharged by the board without having completed all of the work, he was not entitled to recover.   5 C. J. 261; 2 R. C. L. 402; 102 Ark. 152; 112 *Id*. 608.

5.   If discharged without reasonable cause, he could recover only the reasonable value of services actually rendered.   5 C. J. 259, § 8, and note 38; 2 Cal. Ap., 220; 83 Pac. 282.

*W. P. Feazel* and *H. P. Epperson,* for appellee.

1.   If the board knew that appellee was acting or claiming to act as architect by virtue of his contract, and permitted him to do so, and accepted the benefit of his plans, specifications and work, it thereby ratified the contract and is bound by it.   67 Ark. 236; 109 *Id*. 546; 86 *Id*. 309; 78 *Id*.. 483; 142 *Id*. 560; 129 *Id*. 214; 126 *Id*. 622; 110 *Id*. 262; 103 *Id*. 587.

2.   The evidence as to the alleged oral agreement to "step down and out", etc., was properly excluded because, first, it is not shown that it was made at a regular

meeting of the board at which all members attended or of which they had notice; hence, not binding and no mutuality. 96 Ark. 184; 78 *Id.* 276. Second, it tended to contradict, add to, or vary, the signed, written contract. 5 Ark. 65; 102 *Id.* 575.

3. This court's decisions do not support the contention of appellant with reference to the entirety of the contract, and that appellee could not, because of his own conduct, recover for partial performance. 115 Ark. 437; 232 S. W. (Ark.) 534.

HART, J. (after stating the facts). It is settled in this State that no contract can be made by a school board except at a board meeting, and that no meeting can be held unless all the directors are present, or the absent member or members have been duly notified. It has been further held that notice of a regular meeting is, however, unnecessary where regular meetings are held at stated times fixed by the board. *School District* v. *Bennett,* 52 Ark. 511; *Rice* v. *School District No. 20,* 109 Ark. 125; and *School District No. 56* v. *Jackson,* 110 Ark. 262, and cases cited. This is in application of the general rule that where persons are authorized by statute to perform a public service as a board or as an organized body which requires deliberation, they must be convened in a body that they may have the advice of every member, although they may not all be of the same opinion as to the matter in hand.

While there is in the record in the present case a contract signed by Van Dyke and the president and secretary of the Dierks Special School District employing him as architect in the construction of a new school building, it is not shown that this contract was authorized at a regular meeting of the school board, or a special meeting where all the directors were present, or where each of them had been duly notified of the meeting. In the application of the rule above stated, it is conceded by counsel for plaintiff, Van Dyke, that he is not entitled to recover on the contract just referred to, but it is claimed

by him that the contract in question was ratified by the members of the school board, and that therefore he is entitled to recover upon it just as if it had been legally executed in the first instance.

The case was submitted to the jury upon the question of ratification of the contract by the members of the school board. As just stated, Van Dyke bases his right to recover for his services as architect in the construction of the school building upon the ratification of his contract by the members of the school board. Therefore, at his request, the court gave to the jury, over the objections of the defendant, the following instruction:

"No. 3. Although you may find from the evidence that the president and secretary had no authority to sign the contract sued on for and in behalf of the board of directors, but in case you find they did do so, and if you further find that said board at a meeting when all its members were present or had notice of the meeting, accepted the plans and specifications provided for in said contract and constructed its building in accordance with said plans and specifications and knowingly permitted the plaintiff to supervise the work on said building for several months, then you are instructed that defendant can not repudiate its obligations contained in said contract."

Counsel for the defendant objected to this instruction generally and also specifically on the ground that there was no proof that the board ever accepted the plans and specifications provided for in said contract. In this contention we think counsel is correct. The record shows that on the 4th day of September, 1918, at a meeting of the school board in which four members were present, the board voted to receive the contract presented by the architect, V. B. Van Dyke, and instructed the president and secretary of the school board to sign the same, and that the president and secretary did so. There is nothing to show, however, that this was at a regular meeting of the school board, or that all the members of the board were duly notified to be present at it. It will be noted that two

of the members were absent, and it is not shown that they received any notification whatever to be present. This is the only evidence in the record from which to find that the board of directors of said special school district ratified the contract which its president and secretary made with Van Dyke, and this testimony is not sufficient to show a ratification of the contract. As we have already seen, such a contract could only be made or ratified by the board at a regular meeting, or at a call meeting of which all the members of the board were present or had been given due notice.

But counsel for the defendant insists that the language complained of in the instruction was an amendment to the instruction at the instance of counsel for the plaintiff, and that therefore the plaintiff is not now in an attitude to complain. We have examined the record carefully in this respect, and find that counsel are mistaken in their contention. The record shows that counsel for the plaintiff objected generally to the instruction and saved his exceptions to the ruling of the court in giving it. The record further shows that counsel for the plaintiff specifically objected to the instruction on the ground that there was no proof that the board ever accepted the plans and specifications. He stated that the board as such never convened in session with power to act, and that a special or called session in which each member was present or had notice was never had. Again he insisted that there was no proof that such a board meeting ever passed upon the plans and specifications, accepted them or knew anything about them. Thus it will be seen that counsel for the plaintiff made in the court below the very objection to the instruction which he is making here now. It will be readily seen that the instruction was misleading, and should not have been given. The jury might have found under it that the board had ratified the contract made by some of its members with Van Dyke and signed by its president and secretary, and based their verdict upon such a finding. There being no testimony

upon which to support the finding, the instruction was abstract, and necessarily prejudicial to the rights of the defendant. We can not know whether the jury based its verdict upon a finding that the board had ratified the contract with Van Dyke as submitted to it by this instruction, or whether its finding was based upon the ratification by all the individual members of the board as submitted to them by other instructions given by the court at the request of the defendant. The giving of the instruction, therefore, constitutes prejudicial error which calls for a reversal of the judgment.

Again, it is insisted by counsel for the defendant that the judgment should be reversed for the error of the court in refusing to allow certain testimony offered to prove by the secretary of the school board and three other members of it that, after the contract between the school board and Van Dyke had been prepared and just before it was signed, they had an understanding which was not reduced to writing, that,if at any time Van Dyke's services became unsatisfactory and he was unable to get along with the contractor, he would quit. This court has held that parties to a written contract may, subsequent to its execution, rescind it in part or *in toto* and substitute a new oral agreement therefor. *Weaver* v. *Emerson-Brantingham Implement Co.,* 146 Ark. 379. It is equally well settled, however, that a written contract can not be varied or modified by parol evidence.

In the present case the offered testimony shows that the change in the contract was made before it was signed. Therefore the court was correct in excluding it because the contract in such a case would be the last expression of the agreement between the parties.

The court was right in excluding the offered evidence for another reason. The theory of the defendant is that the alleged contract never became binding because it was not properly executed. If the contract never became binding because it was not executed pursuant to authority given at a regular board meeting or at a call meeting of

which all the members were present or had due notice, the alleged modification which occurred at the same time would be invalid for the same reason. Therefore the court did not err in excluding the offered testimony from the jury.

For the error in giving instruction No. 3 asked by the plaintiff, the judgment will be reversed, and the cause remanded for a new trial.